IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No.   2:11-CV-36-D

| | | |
|---|---|---|
| BRYAN CHARLES SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings.  (DE's-35 & 36).   The time for filing any responses or replies has expired, and these motions are now ripe for adjudication.   Pursuant to 28 U.S.C. § 636(b)(1), the motions have been referred to the undersigned for the entry of a Memorandum and Recommendation.   (DE-38).   For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-35) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-36) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**<u>Statement of the Case</u>**

Plaintiff applied for disability insurance benefits ("DIB") on January 20, 2006, alleging that he became unable to work on August 1, 2004.  (Tr. 13)).   This application was denied initially and upon reconsideration.   *Id.*   A hearing was held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled during the relevant time period in a

decision dated June 19, 2009. *Id.* at 13-24. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on May 10, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-5. Plaintiff filed the instant action on July 9, 2011. (DE-1).

## **Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

> 42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453,

1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ deemed the issue of whether Plaintiff had engaged in substantial gainful activity moot. (Tr. 15). Specifically, the ALJ noted that:

> The wages earned in calendar years 2004-2005 and 2007 are above the level defined in the regulations as indicative of substantial gainful activity. Since the claimant did not engage in substantial gainful activity in 2006 and 2008 and since a substantive decision can be made on this claim at a later step in the sequential adjudication process, the Administrative Law Judge finds that the issue of the claimant's earnings after his alleged onset date is moot.

> *Id.*

At step two, the ALJ found that Plaintiff suffered from two severe impairments:

3

degenerative disc disease and an affective disorder. *Id.* at 16. However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain restrictions. *Id.* at 17. Specifically, the ALJ found that:

> The claimant can sit for up to 6 hours in an 8-hour day, stand and walk for up to 2 hours in an 8 hour day, lift 10 pounds occasionally, and frequently lift and carry articles like docket files, ledgers, and small tools. He has a decreased ability to concentrate on and attend to work tasks to the extent that he can perform only simple, routine, repetitive tasks.
>
> *Id.*

The ALJ then determined that Plaintiff was unable to perform his past relevant work. *Id.* at 22. However, based upon the testimony of a vocational expert ("VE"), the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id*. at 22-23. Accordingly, the ALJ determined that Plaintiff was not under a disability from August 1, 2004 through June 19, 2009. *Id.* at 23.

The ALJ's findings were supported by substantial evidence. Plaintiff frequently had full or near full muscle strength. (Tr. 292, 295, 332, 356, 379, 382, 386, 404, 405, 407, 415, 419, 427, 428). His gait was often normal. *Id.* at 295, 380, 386, 419, 428. Straight leg raising was negative on several occasions. *Id.* at 332, 369, 407. Likewise, during several psychiatric evaluations, Plaintiff was described as "doing well." *Id.* at 452, 454, 457, 459

A MRI dated August, 2004 noted only minimal degenerative disc disease in Plaintiff's spine. *Id.* at 295, 307-308.

Dr. Kavita Gupta described Plaintiff's degenerative disc disease as "mild" on September 28, 2004. *Id.* at 295. It was recommended that Plaintiff increase his pain medication dosage and

4

undergo an epidural steroid injection.  *Id.* at 296.

Plaintiff was "stable" upon examination on May 26, 2005.  *Id.* at 353.  Dr. Stephen Boyajian was "unable to appreciate any focal neurosensory deficits."  *Id.*

On December 16, 2005, x-rays of Plaintiff's lumbar spine showed no evidence of instability.  *Id.* at 331.  A January 4, 2006 bone scan was normal and showed no radiographic abnormalities.  *Id.* at 330.

Plaintiff's RFC was assessed on July 20, 2006.  *Id.* at 359-366.  It was determined that Plaintiff could:  1)  occasionally lift 20 pounds; 2) frequently lift 10 pounds; 3) stand and walk about two hours in an eight hour workday; and 4) sit about six hours in an eight hour workday.  *Id.* at 360.

On August 23, 2006, a MRI of Plaintiff's lumbar spine revealed "[s]ome early degenerative changes . . . but the thecal sac and the exiting nerve roots [appeared] normal."  *Id.* at 372.  Alignment was normal, and no disc bulge or protrusion was observed.  *Id.*

Dr. Q.A. Thai stated on September 14, 2006 that, in treating Plaintiff's impairments, he "would not pursue surgical intervention and would try a more conservative approach."  *Id.* at 383.

Plaintiff stated on October 6, 2006 that pain medication improved his symptoms.  *Id.* at 384.  It was recommended that Plaintiff exercise at home and undergo physical therapy.  *Id.* at 386.

On March 16, 2007, Plaintiff reported that his pain was "quite a bit better" after a facet injection.  *Id.* at 412.

Dr. Michael Barnum stated on March 5, 2008 that he would not recommend surgery for Plaintiff unless his symptoms got "dramatically worse" and became "truly debilitating."  *Id.* at 409.

5

Plaintiff's Global Assessment of Functioning ("GAF") was 65 on January 15, 2010. *Id.* at 448. A GAF of 65 indicates some mild symptoms, but that the patient is "generally functioning pretty well." <u>Diagnostic and Statistical Manual of Mental Disorders</u>, p. 34. (4th Ed., Text Revision 2000). Plaintiff was not interested in receiving medication for his depression. *Id.* at 448.

Dr. Beth Winke stated on June 3, 2010 that Plaintiff's "medications help him to remain functional." *Id.* at 427.

With regard to his depression on September 20, 2010, Plaintiff was stable and "functioning well." *Id.* at 458.

On December 22, 2010, Plaintiff's GAF was again assessed at 65-70. *Id.* at 452.

Dr. Cannon testified at Plaintiff's hearing that Plaintiff's impairments-either singly or in combination—did not meet or medically equal any listed impairment. *Id.* at 66. He further opined that Plaintiff was capable of performing the demands of sedentary work. *Id.* at 67.

Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. <u>Craig</u>, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his claims are without merit. The undersigned will nonetheless discuss Plaintiff's individual assignments of error.

**<u>Plaintiff's additional evidence was properly considered</u>**

Plaintiff first argues that the additional evidence he submitted to the Appeals Council was

6

not given appropriate consideration. When the Appeals Council incorporates new evidence into the administrative record, the reviewing court considers the record as a whole, including the new evidence, to determine whether the Commissioner's decision is supported by substantial evidence. Wilkins v. Sec'y of Health & Human Servs., 953 F.2d 93, 96 (4th 1991). Generally, the Appeals Council is not required to articulate a detailed assessment of any additional evidence submitted by a claimant. Freeman v. Halter, 15 Fed. Appx. 87 (4th Cir. 2001)(unpublished); Hollar v. Commissioner of Social Sec. Admin., 194 F.3d 1304 (4th Cir. 1999)(unpublished).

Regardless, most of the evidence submitted by Plaintiff to the Appeals Council post-dates the ALJ's decision, and is therefore not material. *See*, Edwards v. Astrue, 2008 WL 474128, at *9 (W.D.Va. February 20, 2008)(Evidence is not material if it does not relate to the time period that was before the Commissioner.). Moreover, the undersigned has reviewed the record as a whole, including the evidence submitted to the Appeals Council, and finds that the ALJ's decision is supported by substantial evidence. Accordingly, this assignment of error is without merit.

**The opinion of Dr. Barnum was given proper weight**

Next, Plaintiff argues that the ALJ failed to give proper weight to the opinion of a treating physician, Dr. Barnum. It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245, * 8 (W.D.Va. September 5, 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Id*. (internal citations omitted). While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the

7

testimony be given controlling weight." <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1992).

Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is

entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in the record."

<u>Mastro</u>, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not

supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be

accorded significantly less weight." <u>Craig</u>, 76 F.3d at 590. In sum, "an ALJ's determination as to

the weight to be assigned to a medical opinion will generally not be disturbed absent some

indication that the ALJ has dredged up specious inconsistencies or has not given good reason for

the weight afforded a particular opinion." <u>Koonce v. Apfel</u>, 1999 WL 7864, * 2 (4th Cir. 1999)

(unpublished opinion)(internal citations omitted).

In his decision, the ALJ fully explained her reasoning in weighing the medical evidence,

including the opinion of Dr. Barnum. (Tr. 21-22). These reasons were supported by substantial

evidence and, therefore, this assignment of error is without merit.

**<u>The ALJ's hypothetical to the VE was supported by substantial evidence</u>**

Next, Plaintiff argues that the ALJ's hypothetical question to the VE did not accurately set

forth all of Plaintiff's impairments. The undersigned disagrees. An ALJ has "great latitude in

posing hypothetical questions [to a VE] and is free to accept or reject suggested restrictions so long

as there is substantial evidence to support the ultimate question." <u>Koonce</u>, 1999 WL 7864 at * 5.

The ALJ is required only to "pose those [hypothetical questions] that are based on substantial

evidence and accurately reflect the plaintiff's limitations . . ." <u>France v. Apfel</u>, 87 F. Supp. 2d

484, 490 (D. Md. March 13, 2000). Here, the hypothetical question posed to the VE by the ALJ

was based on a RFC determination supported by substantial evidence and therefore accurately

reflected all of Plaintiff's limitations. This assignment of error is without merit.

**The ALJ properly assessed Plaintiff's credibility**

Finally, Plaintiff contends that the ALJ did not properly assess his credibility. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Furthermore, the regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; Craig , 76 F.3d at 593-96. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594. Second, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); Craig, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. See Craig, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186,

*4.   Ultimately, the ALJ's findings with regard to a claimant's credibility must "contain specific reasons . . . supported by evidence in the case record." *Id.* at * 2.

Here, the ALJ followed these standards in assessing Plaintiff's credibility.   The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. (Tr. 17-21).   Likewise, the ALJ's citations to Plaintiff's medical records constitute substantial evidence which support that assessment.   *Id.* Accordingly, this assignment of error is without merit.

<u>Conclusion</u>

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-35) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-36) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Tuesday, July 10, 2012.


_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE